UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ANTHONY BOGGIANO,

               Plaintiff,

v.

KRISTEN ROGERS et al.,

               Defendants.
_____/

Case No. 1:18-cv-212

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Grand Rapids Police Lieutenant Kristen Rogers and Grand Rapids Police Detective Case Weston for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan. The

events about which he complains, however, occurred in Kent County, Michigan, as the police investigated the crime of which he was convicted. Plaintiff's complaint is scant on details regarding his crime. The Michigan Court of Appeals provided some details that put Plaintiff's complaint in context:

> According to the evidence introduced at trial, defendant sexually assaulted the victim while she was sleeping in the early morning hours of December 27, 2013. Late the previous night, the victim enjoyed a few drinks at a local bar with her roommate, some friends, and defendant. When the bar closed, the group returned to the apartment that the victim shared with her roommate. The victim went to bed alone and fully-clothed. She did not consent to any sexual acts. However, she awoke around 5:00 or 5:30 a.m. to find herself naked from the waist down and defendant kneeling over the top of her, between her legs, with his pants down. The victim noticed her vagina was wet. The victim alerted her friends, and defendant left the apartment. The same day, the victim reported the incident to the police and underwent an examination by Alison Edidin, a sexual assault nurse examiner (SANE). Edidin observed an abrasion on the victim's perineum caused by something sharp, possibly a fingernail; and she testified that her findings were "consistent with a sexual assault." Forensic testing revealed the presence of saliva in swabs collected from the victim's vulvar and vaginal wall as well as low levels of male DNA in the swabs from the victim's vulvar, though the quantity of DNA was too low to allow comparison to a possible donor.

> *During a recorded interview with police, defendant fully admitted that he engaged in sexual activity with the victim.* He told police: "I had oral sex with her, and I fingered her." Initially, defendant claimed that the victim consented to having sex with him. He conceded that the victim did not invite him to her room. Nevertheless, he told police that, when he entered the bedroom, the victim was awake, and he and the victim had a conversation during which she said she was "cool" with "mess[ing] around." According to defendant, everything seemed fine until the victim "freaked out." However, defendant soon changed his story and admitted that he "made a mistake" on the night in question. He told police that the victim may not have been fully conscious and that they did not have a conversation during which the victim consented.

*People v. Boggiano*, No. 332450, 2017 WL 3441427, *1 (Mich. Ct. App. Aug. 10, 2017) (emphasis supplied).[1]  The recorded interview with police referenced in the appellate court's opinion lies at the foundation of Plaintiff's civil rights claims in this Court.

Plaintiff sues Grand Rapids Police Department Family Affairs Division Detectives Lieutenant Kristen Rogers and Case Weston.  (Compl., ECF No. 1, PageID.6.)  Plaintiff alleges that Defendants Rogers and Weston contacted the Plaintiff via cell phone on December 27, 2013, as part of Defendants' investigation of an allegation that Plaintiff had sexually assaulted a woman.  (*Id.*, PageID.7.)  Plaintiff agreed to speak with Defendants at Plaintiff's residence.  (*Id.*)  Unbeknownst to Plaintiff, Defendants recorded their conversation with Plaintiff.  (*Id.*)  Defendants provided the recorded conversation to a magistrate who, based thereon, made a probable cause determination.  (*Id.*, PageID.8.)  Defendants also provided the recorded conversation to the prosecutor who introduced a redacted transcript of the recorded conversation at trial.  (*Id.*)

Plaintiff claims the recording of the conversation constituted an illegal warrantless search, led to an illegal warrant, and caused his illegal arrest.  Plaintiff seeks compensatory and punitive damages exceeding $750,000.00.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] The court of appeals affirmed the trial court on all issues.  Plaintiff's application for leave to appeal to the Michigan Supreme Court remains pending.   http://courts.mi.gov/opinions_orders/case_search/pages/default.aspx; then search "332450" (last visited March 15, 2018).

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments.  It is not a violation of the Fourth or Fourteenth Amendment, or the counterparts of those provisions in the Michigan Constitution, for a participant in a conversation

4

to record the conversation or for the recording to be used at trial. *United States v. White*, 401 U.S. 745, 752 (1971) (plurality opinion) ("If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case."); *United States v. Lopez*, 373 U.S. 427, 439 (1963) ("The Government did not use an electronic listening device to listen in on conversations it could not otherwise have heard. Instead the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which the agent was fully entitled to disclose. . . . [The device] was carried in and out by an agent who was there with petitioner's assent, and it neither saw nor heard more than the agent himself."); *see also United States v. Cacares*, 440 U.S. 741, 750 (1979) ("In [*Lopez*] we repudiated any suggestion that the defendant had a 'constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment,' . . . ."); *People v. Collins*, 475 N.W.2d 684, 698 (Mich. 1991) ("It is our conclusion in this case that the warrantless participant monitoring in this case violated no reasonable expectation of privacy on the part of defendant, and that there is no compelling reason to interpret [the Michigan Constitution] as affording greater protection for this defendant is provided under the Fourth Amendment."). The premise of Plaintiff's entire complaint is unsupportable. His claims are frivolous.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Grand Rapids Police Lieutenant Kristen Rogers and Grand Rapids Police Detective Case Weston will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:   March 20, 2018              /s/ Janet T. Neff            
                                                Janet T. Neff
                                                United States District Judge